O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

GERALD M. CASTLE, JR.;      )    Case No. EDCV 11-00538 VAP
AND MICHELLE J. CASTLE,     )    (DTBx)
                            )
                Plaintiffs, )    **[Motion filed on July 14,**
                            )    **2011]**
        v.                  )
                            )    **ORDER GRANTING DEFENDANTS'**
MORTGAGE ELECTRONIC         )    **MOTION TO DISMISS**
REGISTRATION SYSTEMS,       )
INC.; WELLS FARGO BANK,     )
NA; FANNIE MAE; AND DOES    )
1-100, INCLUSIVE,           )
                            )
                Defendants. )
_____)

     Plaintiffs, Gerald M. Castle, Jr. and Michelle J.
Castle (collectively, "Plaintiffs"), filed this action in
the Superior Court of California for the County of San
Bernardino alleging that Defendants Mortgage Electronic
Registration Systems, Inc. ("MERS"), Wells Fargo Bank, NA
("Wells Fargo"), and Fannie Mae ("Fannie Mae")
(collectively, "Defendants") wrongfully foreclosed on
their residence in San Bernardino, California.  (See Doc.
No. 1 (Not. of Removal), Ex. A (Compl.).)  Defendants

1  removed the action to this Court on the basis of

2  diversity jurisdiction.  (See Not. of Removal at 2-3

3  (citing 28 U.S.C. §§ 1332, 1441).)  Plaintiffs

4  subsequently filed a first amended complaint ("FAC").

5  (Doc. No. 8.)  Defendants then filed a motion to dismiss

6  Plaintiffs' FAC ("Motion"), pursuant to Federal Rule of

7  Civil Procedure 12(b)(6).  (Doc. No. 21.)  The Court

8  finds the Motion is appropriate for resolution without

9  a hearing and accordingly VACATES the hearing set for

10  August 15, 2011, at 2:00 p.m.  See Fed. R. Civ. P. 78,

11  L.R. 7-15.  Having considered the papers filed in support

12  of, and in opposition to, the Motion, the Court GRANTS

13  the Motion for the reasons below.

14

15                    **I. BACKGROUND**

16  **A.   Factual Summary**

17       By grant deed, Plaintiffs acquired the residence

18  located at 5907 N. Honeysuckle Lane, San Bernardino,

19  California 92407 (the "Property") on September 25, 2005.

20  (FAC. ¶ 8.)  Plaintiffs signed a promissory note in the

21  amount of $245,000.00, which was secured by a Deed of

22  Trust recorded against the Property on November 15, 2005.

23  (FAC ¶ 9, Ex. B.)  The Deed of Trust identifies Alliance

24  Title Co. as the "trustee" and MERS as both the "nominee"

25  of the lender as well as the "beneficiary under this

26  Security Instrument."  (Id.)  The Deed of Trust provides

27  that MERS has the right to foreclose on the Property:

28

"Borrower understands and agrees that . . . MERS (as nominee for Lender and Lender's successors and assigns) has the right . . . to foreclose and sell the Property . . . ."  (Id. at 3 (emphasis added).)

Plaintiffs defaulted on their mortgage payments, and Wells Fargo, care of Cal-Western Reconveyance Corporation ("Cal-Western"), recorded a "Notice of Default and Election to Sell under Deed of Trust" ("NOD") on March 15, 2010.  (FAC, Ex. C.)  The NOD states that MERS, as beneficiary of the Deed of Trust, "does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby."  (Id. at 2.)  On May 14, 2010, Cal-Western substituted for Alliance as the trustee.  (FAC, Ex. D.)  On June 16, 2010, Cal-Western recorded a "Notice of Trustee's Sale."  (FAC, Ex. F.) Fannie Mae purchased the Property on July 6, 2010, at the Trustee's Sale.  (FAC, Ex. H at 1-2.)  On July 27, 2010, Wells Fargo assigned the Trust Deed to Fannie Mae.  (FAC, Ex. G (Trustee's Deed Upon Sale).)

Plaintiffs failed to vacate the premises following the foreclosure.  Accordingly, on November 29, 2010, Fannie Mae filed an unlawful detainer action ("Unlawful Detainer Action") against Plaintiffs in the Superior Court for the County of San Bernardino.  (FAC ¶¶ 19-20; Ex. I at 1-2 (Writ of Possession); Defs.' Suppl. RJN, Ex.

A (Unlawful Detainer Compl.).)  On February 25, 2011, the
Superior Court entered default judgment in Fannie Mae's
favor and ordered Plaintiffs to relinquish possession of
the Property.  (Id.; Defs.' Suppl. RJN, Ex. B (Judgment);
FAC, Ex. I at 1-2 (Writ of Possession).)  On March 10,
2011, Fannie Mae obtained a Writ of Possession for the
Property.  (FAC ¶ 20, Ex. I at 1-2.)  On March 30, 2011,
the Superior Court issued a "Notice to Vacate," which
stated, "By virtue of the Writ of Execution for
Possession/Real Property (eviction), issued out of the
above court, you are hereby ordered to vacate the
premises described on the writ."  (FAC, Ex. I at 3
(Notice to Vacate).)

**B.   Procedural History**

On March 28, 2011, approximately one month after the
Superior Court issued judgment in Fannie Mae's favor,
Plaintiffs filed the instant action against Defendants in
state court, alleging that the foreclosure and trustee's
sale were procedurally improper.  According to
Plaintiffs, Cal-Western's substitution of trustee was
invalid because it was recorded two months after the NOD.
(FAC ¶ 20.)  Thus, at the time Cal-Western initiated the
foreclosure, it was not the Trustee.  (FAC 11.)
Moreover, Plaintiffs allege Ohio Savings "had already
been closed by the FDIC," (id.) and Wells Fargo was not a
beneficiary in the chain of title (id. ¶ 12).  Plaintiffs

1  assert four claims: (1) wrongful foreclosure; (2)

2  wrongful eviction; (3) quiet title; and (4) unfair

3  business practices.  (See generally FAC.)

4

5     On April 5, 2011, Defendants removed the action to

6  this Court on the basis of diversity jurisdiction.  (Not.

7  of Removal at 2-3.)  On May 22, 2011, Defendants filed a

8  motion to dismiss (Doc. No. 6), and Plaintiffs responded

9  by filing the FAC on June 2, 2011 (Doc. No. 8).  The

10 Court accordingly denied Defendants' motion to dismiss as

11 moot.  (Doc. No. 13.)

12

13    On July 14, 2011, Defendants filed the instant Motion

14 (Doc. No. 21) and a request for judicial notice ("Defs.'

15 RJN") (Doc. No. 22).  Defendants move to dismiss the FAC

16 on the grounds that Plaintiffs' claims are barred by res

17 judicata.  Alternatively, Defendants argue Plaintiffs

18 fail to state claims for relief under Federal Rule of

19 Civil Procedure 12(b)(6).  Plaintiffs filed an opposition

20 ("Opposition") to the Motion on July 27, 2011.[1]  (Doc.

21

22    [1] Under Local Rule 7-9, a party must file opposition
papers no later than 21 days before the date designated
23 for hearing the motion.  As the hearing on the Motion is
scheduled for August 15, 2011, Plaintiffs should have
24 filed their opposition papers no later than July 25,
2011.  Plaintiffs accordingly filed the Opposition two
25 days late, without explanation.  Under Local Rule 7-12,
the Court may construe failure to file opposition timely
26 as consent to granting the motion.  See L.R. 7-12 ("The
failure to file any required paper, or the failure to
27 file it within the deadline, may be deemed consent to the
granting or denial of the motion.").  The Court
28                                        (continued...)

1  No. 23.)  Defendants filed a reply ("Reply") (Doc. No.

2  24) and a supplemental request for judicial notice

3  ("Defs.' Suppl. RJN") (Doc. No. 25) on August 2, 2011.

4

5                    **II. LEGAL STANDARD**

6       Federal Rule of Civil Procedure 12(b)(6) (hereafter

7  "Rule 12(b)(6)") allows a party to bring a motion to

8  dismiss for failure to state a claim upon which relief

9  can be granted.  As a general matter, the Federal Rules

10  require only that a plaintiff provide "'a short and plain

11  statement of the claim' that will give the defendant fair

12  notice of what the plaintiff's claim is and the grounds

13  upon which it rests." Conley v. Gibson, 355 U.S. 41, 47

14  (1957) (quoting Fed. R. Civ. P. 8(a)(2)); Bell Atl. Corp.

15  v. Twombly, 550 U.S. 544, 555 (2007).  In addition, the

16  Court must accept all material allegations in the

17  complaint as true and construe them in the light most

18  favorable to the nonmoving party.  See Doe v. United

19  States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology

20  v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir.

21  2005).

22

23

24

25  _____

26       [1](...continued)
   nevertheless considers the Opposition in the interest of
27  justice.

28

6

1     "While a complaint attacked by a Rule 12(b)(6)
2  motion to dismiss does not need detailed factual
3  allegations, a plaintiff's obligation to provide the
4  'grounds' of his 'entitlement to relief' requires more
5  than labels and conclusions, and a formulaic recitation
6  of the elements of a cause of action will not do." Bell
7  Atl., 550 U.S. at 555 (citations omitted).  Rather, the
8  allegations in the complaint "must be enough to raise a
9  right to relief above the speculative level." Id.
10
11     In other words, the allegations must be plausible on
12  the face of the complaint. See Ashcroft v. Iqbal, 556
13  U.S. ___, 129 S. Ct. 1937, 1949 (2009).  "The
14  plausibility standard is not akin to a 'probability
15  requirement,' but it asks for more than a sheer
16  possibility that a defendant has acted unlawfully.  Where
17  a complaint pleads facts that are 'merely consistent
18  with' a defendant's liability, it stops short of the line
19  between possibility and plausibility of 'entitlement to
20  relief.'" Id. (citations and internal quotations
21  omitted).
22
23     Although the scope of review is limited to the
24  contents of the complaint, the Court also may consider
25  exhibits submitted with the complaint, Hal Roach Studios,
26  Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19
27  (9th Cir. 1990), and "take judicial notice of matters of
28

7

1  public record outside the pleadings," <u>Mir v. Little Co.</u>
2  <u>of Mary Hosp.</u>, 844 F.2d 646, 649 (9th Cir. 1988).
3
4      If a court concludes dismissal is appropriate, leave
5  to amend "shall be freely given when justice so
6  requires."  Fed. R. Civ. P. 15(a).  The Ninth Circuit has
7  held that "'[t]his policy is to be applied with extreme
8  liberality.'"  <u>Eminence Capital, L.L.C. v. Aspeon, Inc.</u>,
9  316 F.3d 1048, 1051 (9th Cir. 2003) (quoting <u>Owens v.</u>
10 <u>Kaiser Found. Health Plan, Inc.</u>, 244 F.3d 708, 712 (9th
11 Cir. 2001)).  Leave to amend should only be denied on a
12 showing of bad faith, undue delay, prejudice to the
13 opposing party, or futility of the amendment.  <u>Royal Ins.</u>
14 <u>Co. of Am. v. Sw. Marine</u>, 194 F.3d 1009, 1016 (9th Cir.
15 1999).
16
17                    **III. DISCUSSION**
18 **A.   Preclusion**
19      Under 28 U.S.C. § 1738, federal courts are required
20 to give full faith and credit to state court judgments.
21 <u>See San Remo Hotel, L.P. v. City & Cnty. of San</u>
22 <u>Francisco</u>, 545 U.S. 323, 336 (2005).  That is, state
23 court judgments have the same preclusive effect in
24 federal court as they would have in the state's own
25 court.  <u>Migra v. Warren City Sch. Dist. Bd. of Educ.</u>, 465
26 U.S. 75, 81 (1984) ("It is now settled that a federal
27 court must give to a state-court judgment the same
28

preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."); Brodheim v. Cry, 584 F.3d 1262, 1268 (9th Cir. 2009).  "The fact that a plaintiff requests a different type of relief, or even presents a different legal theory, does not negate or lessen the binding effect of the previous state court judgment." Moore v. City of Costa Mesa, 678 F. Supp. 1448, 1450 (C.D. Cal. 1987).

A defendant may raise the affirmative defense of preclusion by way of a motion to dismiss under Rule 12(b)(6).  See Scott v. Kuhlmann, 746 F.2d 1377, 1378 (9th Cir. 1984).  The doctrine of res judicata "is a rule of fundamental and substantial justice, of policy and of private peace, which should be cordially regarded and enforced by the courts." Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 401 (1981) (citations omitted). The doctrine "rests upon the sound public policy that there must be an end of litigation" and, accordingly, persons who have had a fair opportunity to litigate an issue may not again have it adjudicated.  Lai v. Quality Loan Serv. Corp., No. CV 10-2308 PSG (PLAx), 2010 WL 3419179, at *3 (C.D. Cal. Aug. 26, 2010) (citing Dillard v. McKnight, 34 Cal 2d 214 (1949)).

1    The term "res judicata" often is understood to
2    encompass both claim preclusion and issue preclusion.
3    Here, Defendants appear to raise claim preclusion, though
4    their arguments could apply to either doctrine.  The
5    Court accordingly examines each doctrine in turn.  For
6    the reasons set forth below, the Court finds Plaintiffs'
7    claims are barred under the doctrines of claim and issue
8    preclusion.
9
10   **1.   Claim Preclusion (Res Judicata)**
11   "Under res judicata, a final judgment on the merits
12   of an action precludes the parties or their privies from
13   relitigating issues that were or could have been raised
14   in that action." Allen v. McCurry, 449 U.S. 90, 94
15   (1980). "California, as most states, recognizes that the
16   doctrine of res judicata will bar not only those claims
17   actually litigated in a prior proceeding, but also claims
18   that could have been litigated." Palomar Mobilehome Park
19   Ass'n v. City of San Marcos, 989 F.2d 362, 364 (9th Cir.
20   1993).
21
22   As a threshold matter, both parties employ federal
23   claim preclusion law in their papers. (See Mot. at 4-5;
24   Opp'n at 5-6.)  In a diversity of citizenship action,
25   however, a federal court applies the preclusion rules of
26   the state in which it sits. Taylor v. Sturgell, 553 U.S.
27   880, 891 n.4 (2008); Semtek Int'l Inc. v. Lockheed Martin
28

10

1  Corp., 531 U.S. 497, 508-09 (2001).  Thus, as the basis
2  for the Court's jurisdiction here is diversity,
3  California, not federal, claim preclusion law applies.
4
5      In California, the doctrine of claim preclusion, also
6  known as res judicata, "describes the preclusive effect
7  of a final judgment on the merits." Mycogen Corp. v.
8  Monsanto Co., 28 Cal. 4th 888, 896 (2002).  In
9  California, "claim preclusion . . . prevents relitigation
10 [(1) after a final judgment on the merits] [(2)] of the
11 same cause of action in a second suit [(3)] between the
12 same parties or parties in privity with them." Id. at
13 897 (citations omitted); Goddard v. Sec. Title Ins. &
14 Guarantee Co., 14 Cal. 2d 47, 51 (1939) ("[A] final
15 judgment, rendered upon the merits by a court having
16 jurisdiction of the cause, is conclusive of the rights of
17 the parties and those in privity with them, and is a
18 complete bar to a new suit between them on the same cause
19 of action.").
20
21          **i.  Final Judgment on the Merits**
22      The parties sharply dispute whether there was a final
23 judgment on the merits in the Unlawful Detainer Action.
24 To determine the preclusive effect of a state court
25 judgment, federal courts look to state law.  Palomar
26 Mobilehome Park Ass'n, 989 F.2d at 364.  A dismissal for
27 failure to state a claim, or failure to prosecute,
28

constitutes final judgment for purposes of res judicata analysis.  Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 228 (1995).  Likewise, under California law, "[t]he doctrine of res judicata applies even against a default judgement."  Carey v. United States, No. CIV S-08-2504-JAM-CMK, 2010 WL 1904841, at *6 (E.D. Cal. May 7, 2010) (citing Morris v. Jones, 329 U.S. 545, 550-51 (1947)).

Here, the Superior Court entered judgment against Plaintiffs on February 25, 2011, and issued a Writ of Possession in Defendant Fannie Mae's favor on March 18, 2011.  (Suppl. RJN, Ex. A; FAC, Ex. I.)  As discussed more fully in Section III(A)(1)(ii) infra, courts have found that where a state court enters judgment against a borrower in an unlawful detainer action and issues a writ of possession, as here, this constitutes a final judgment on the merits, even if the judgment was entered in default.  See, e.g., Albano v. Nw. Fin. Haw., Inc., 244 F.3d 1061, 1064 (9th Cir. 2001) (holding a default judgment in a foreclosure action was res judicata to borrowers' later-filed TILA claim).

### ii. Same Cause of Action

In determining whether claim preclusion bars another action or proceeding, California courts examine whether the two actions concern a single cause of action under

1  the primary rights doctrine.  <u>Mycogen</u>, 28 Cal. 4th at

2  904; <u>Manufactured Home Cmtys. v. City of San Jose</u>, 420

3  F.3d 1022, 1031 (9th Cir. 2005).  This doctrine provides:

4

5    A "cause of action" is comprised of a "primary
  right" of the plaintiff, a corresponding "primary

6    duty" of the defendant, and a wrongful act by the
  defendant constituting a breach of that duty.  The

7    most salient characteristic of a primary right is
  that it is indivisible:  the violation of a single

8    primary right gives rise to but a single cause of
  action.

9  <u>Mycogen</u>, 28 Cal. 4th at 904 (internal quotation and

10  alterations omitted).  Thus, "all claims based on the

11  same cause of action must be decided in a single suit; if

12  not brought initially, they may not be raised at a later

13  date." <u>Id.</u> at 897.  "If an action involves the same

14  injury to the plaintiff and the same wrong by the

15  defendant then the same primary right is at stake even if

16  in the second suit, the plaintiff pleads different

17  theories of recovery, seeks different forms of relief

18  and/or adds new facts supporting recovery." <u>Eichman v.</u>

19  <u>Fotomat Corp.</u>, 147 Cal. App. 3d 1170, 1174 (1983)

20  (internal citations omitted); <u>Manufactured Home Cmtys.</u>,

21  420 F.3d at 1032 ("Different theories of recovery are not

22  separate primary rights.").  "[T]he harm suffered" is

23  "the significant factor" in defining a primary right.

24  <u>Craig v. Cnty. of Los Angeles</u>, 221 Cal. App. 3d 1294,

25  1301 (1990); <u>accord</u> <u>Balasubramanian v. San Diego Cmty.</u>

26  <u>Coll. Dist.</u>, 80 Cal. App. 4th 977, 992 (2000); <u>Branson v.</u>

27  <u>Sun-Diamond Growers</u>, 24 Cal. App. 4th 327, 340 (1994).

28

Accordingly, the threshold question presented is
whether the Superior Court judgment in the Unlawful
Detainer Action brought by Fannie Mae precludes
Plaintiffs from challenging the validity of the
foreclosure and trustee's sale in this action.   The
judgment in the Unlawful Detainer Action bars this action
"if both suits seek to vindicate the same primary right."
Mycogen, 28 Cal. 4th at 904.   Defendants contend that all
of the claims presented in this action were resolved in
the unlawful detainer proceedings.   Plaintiffs counter
that the unlawful detainer judgment only has limited
preclusive effect, given that the issues presented in
this action were not litigated in the underlying state
court action, i.e., the Superior Court did not reach the
merits.   Specifically, Plaintiffs assert that because the
Superior Court entered default judgment, it did not
consider their contention that the notice of default and
trustee's sale were procedurally improper.   (Opp'n at 5.)
The Court finds Defendants' arguments more persuasive.

First, even if Plaintiffs did not raise the
procedural defect defense in the Unlawful Detainer
Action, res judicata bars litigation of any issue that
could have been raised in the prior action.   See Amin v.
Khazindar, 112 Cal. App. 4th 582, 590 (2003).   Thus, the
Court must consider whether Plaintiffs could have raised

1  their claims regarding irregularities in the foreclosure

2  and trustee's sale in the Unlawful Detainer Action.

3

4      The defenses available to a defendant in an unlawful

5  detainer action are limited.  As the California Supreme

6  Court explained, an unlawful detainer "proceeding is

7  summary in character; . . . ordinarily, only claims

8  bearing directly upon the right of immediate possession

9  are cognizable." Vella v. Hudgins, 20 Cal. 3d 251, 255

10  (1977).  As such, "a judgment in unlawful detainer

11  usually has very limited res judicata effect and will not

12  prevent one who is dispossessed from bringing a

13  subsequent action to resolve questions of title or to

14  adjudicate other legal and equitable claims between the

15  parties." Id. at 255 (emphasis added); Mehr v. Super.

16  Ct., 139 Cal. App. 3d 1044, 1049 (1983) ("Because of its

17  summary character, an unlawful detainer action is not a

18  suitable vehicle to try complicated ownership issues

19  involving allegations of fraud.").  Yet, title may be

20  litigated in an unlawful detainer action to a "limited

21  extent, as provided by" California Code of Civil

22  Procedure section 1161a.  Vella, 20 Cal. 3d at 255

23  (citing Cheney v. Trauzettel 9 Cal. 2d 158, 159 (1937)).

24

25      In Vella, the California Supreme Court held that a

26  judgement in a prior unlawful detainer action did not bar

27  a subsequent action alleging that the defendant had

28

15

fraudulently induced the plaintiff to default on a note
so the defendant could foreclose on the property.  20
Cal. 3d at 254-55.  The court noted that title to
property generally cannot be tried in an unlawful
detainer action, but cited section 1161a as a "narrow and
sharply focused" exception that permits a party "who has
purchased property at a trustee's sale and seeks to evict
the occupant in possession [to] show that he acquired the
property at a regularly conducted sale and thereafter
'duly perfected' his title."  Id. at 255-56 ("[C]ourts
have held that subsequent fraud or quiet title suits
founded upon allegations of irregularity in a trustee's
sale are barred by the prior unlawful detainer judgment."
(emphasis added)); see also Freeze v. Salot, 122 Cal.
App. 2d 561, 566-67 (1954); Bliss v. Sec. First Nat'l
Bank, 81 Cal. App. 2d 50, 58 (1947); Seidell v. Ango-Cal.
Trust Co., 55 Cal. App. 2d 913, 918, 921 (1942).

     "In fact, '[a]lthough most issues unrelated to
possession can be raised in a subsequent action between
the parties, the issue of the irregularity of the
foreclosure or execution sale is barred by a judgment in
an unlawful detainer action.'"  Lai, 2010 WL 3419179, at
*4 (citing 7 Miller & Star, Cal. Real Est. § 19.223 (3d
ed.)).  Where the fraud alleged in a second action is not
connected directly to the trustee's sale, however,
relitigation is not barred unless the party asserting res

16

judicata as a defense shows that the plaintiff had a full
and fair opportunity to litigate the issue of ownership
in the unlawful detainer proceeding.  <u>Vella</u>, 20 Cal. 3d
at 257.

    This narrow exception is illustrated by the
California Court of Appeal's holding in <u>Malkoskie v.
Option One Mortgage Corp.</u>, 188 Cal. App. 4th 968 (2010).
There, the plaintiffs defaulted on their mortgage
payments, which resulted in the commencement of
foreclosure proceedings by Alliance Title Company, as
trustee for Option One, the beneficiary named in the deed
of trust.  <u>Id.</u> at 971-72.  Wells Fargo acquired the
property at the trustee's sale and filed an unlawful
detainer action against the plaintiffs.  <u>Id.</u>  In
response, the plaintiffs argued that the foreclosure sale
was invalid due to improper notice and because there were
"irregularities in the sale."  <u>Id.</u> at 972.  The
plaintiffs and Wells Fargo agreed to the entry of a
stipulated judgment, and the plaintiffs were forcibly
evicted.  <u>Id.</u>  The plaintiffs later filed a civil lawsuit
against Option One and Wells Fargo, among others,
alleging causes of action for declaratory relief, quiet
title, cancellation of trustee's deed, willful wrongful
foreclosure, negligent wrongful foreclosure, wrongful
eviction, and negligence.  The trial court sustained the
defendants' demurrer without leave to amend.  The

1   California Court of Appeal affirmed, holding that "the
2   stipulated judgment in the related unlawful detainer
3   action brought by Wells Fargo against plaintiffs was res
4   judicata as to plaintiffs' claims in this action which
5   all arise from the alleged invalidity of the foreclosure
6   sale."  Id. at 973, 976 ("We therefore hold the unlawful
7   detainer judgment has claim preclusive effect in this
8   action challenging the validity of Wells Fargo's
9   title.").

10

11      In reaching its decision, the California Court of
12  Appeal rejected the plaintiffs' contention that the issue
13  of whether the trustee had the legal authority to proceed
14  with the foreclosure was not embraced or resolved by the
15  unlawful detainer action.  Id. at 973-76.  The court
16  explained that "the validity of Wells Fargo's title had
17  to be resolved in the unlawful detainer action" and "by
18  stipulating to judgment against them, plaintiffs conceded
19  the validity of Wells Fargo's allegations that the sale
20  had been duly conducted and operated to transfer 'duly
21  perfected' legal title to the property."  Id.  at 974,
22  976.  As a result, the court found that the plaintiffs'
23  assertion "that no valid legal title passed to Wells
24  Fargo in the sale . . . [was] precluded by their
25  voluntary stipulation to a judgment that necessarily
26  decided valid title passed to Wells Fargo entitling the
27  bank to possess the property."  Id. at 975-76.

28

1    As in <u>Malkoskie</u>, Plaintiffs' claims here are based on
2 the same primary right at issue in the unlawful detainer
3 proceeding, <u>i.e.</u>, the right to the Property.  Plaintiffs
4 assert the Court should invalidate the foreclosure and
5 trustee's sale because "at the time Cal-Western initiated
6 the foreclosure, it was not appointed the Trustee" and
7 "Ohio Savings had already been closed by the FDIC."  (FAC
8 ¶ 11.)  Further, Plaintiffs allege that "Wells Fargo was
9 not a beneficiary or in the chain of title."  (<u>Id.</u> ¶ 12.)
10 In the Unlawful Detainer Complaint, however, Fannie Mae
11 alleged that it acquired the property at a regularly
12 conducted trustee's sale and thereafter duly perfected
13 its title.  (Unlawful Detainer Compl. ¶ 1.)  The validity
14 of the foreclosure process, trustee's sale, and Fannie
15 Mae's acquisition of the Property were all encompassed by
16 the Unlawful Detainer Action.

17

18    Plaintiffs chose not to defend the Unlawful Detainer
19 Action, however, and judgment was entered against them.
20 Plaintiffs then chose not to move to set aside the
21 default judgment or to appeal that ruling.  Moreover,
22 Plaintiffs have not alleged that they discovered new
23 facts or evidence since the Superior Court issued the
24 judgment nor have Plaintiffs provided any reason for
25 their failure to defend that case.  Instead, Plaintiffs
26 filed this lawsuit in which the factual allegations
27
28

1   exclusively relate to irregularities in the foreclosure
2   proceedings and trustee's sale.

4      Courts consistently have held that such claims may
5   not be relitigated following the entry of judgment in an
6   unlawful detainer action.  See Ann v. Tindle, 321 Fed.
7   Appx. 619,  619-20 (9th Cir. 2009) (holding an earlier
8   unlawful detainer action was res judicata to plaintiff's
9   breach of contract and civil rights claims because the
10  claims "concern[ed] the same primary right as the
11  unlawful detainer action . . .: [plaintiff's] rights to
12  the apartment."); Dancy v. Aurora Loan Servs., No. C 10-
13  2602 SBA, 2011 WL 835787, at *4-6 (N.D. Cal. Mar. 4,
14  2011) (holding an earlier unlawful detainer action was
15  res judicata to plaintiff's action to quiet title);
16  Carter v. U.S. Bank N.A., No. 10CV2365 DMS (POR), 2011 WL
17  1004830, at *3 (S.D. Cal. Mar. 18, 2011) (same as to
18  plaintiff's claims to set aside the trustee's sale and
19  cancel the trustee's deed); Lai, 2010 WL 3419179, at *3-6
20  (same as to plaintiff's claims to void or set aside the
21  deed of trust and foreclosure sale); Velasquez v. U.S.
22  Bank Nat'l Ass'n, No. CV 09-1104 PSG (AJWx), 2009 WL
23  1941807, at *2-3 (C.D. Cal. July 1, 2009) (same as to
24  plaintiff's action to quiet title); Malkoskie, 188 Cal.
25  App. 4th at 972-73; cf. Albano, 244 F.3d at 1064 (holding
26  a default judgment in a foreclosure action was res
27
28

1  judicata to borrowers' later-filed TILA claim under

2  Hawaii law).

3

4      Plaintiffs attempt to avoid the preclusive effect of

5  the Unlawful Detainer judgment by arguing that the

6  Superior Court necessarily did not reach Plaintiffs'

7  arguments because the case was decided on a default

8  judgment basis.  This argument fails for two reasons.

9  First, as set forth above, California recognizes the

10  preclusive effect of default judgments.  Secondly,

11  whether or not the Superior Court actually considered

12  Plaintiffs' arguments is irrelevant to a res judicata

13  inquiry because the Court considers not only those issues

14  that actually were litigated, but also those that could

15  have been litigated.  Albano, 244 F.2d at 1064; Palomar

16  Mobilehome Park Ass'n, 989 F.2d at 364.

17

18      Despite the summary nature of California's

19  foreclosure proceedings, when a purchaser brings an

20  unlawful detainer action pursuant to California Code of

21  Civil Procedure section 1161a, the purchaser must

22  demonstrate that it acquired the property at a regularly

23  conducted sale and thereafter duly perfected its title.

24  Cal. Code. Civ. P. § 1161a.  In the Unlawful Detainer

25  Complaint, Fannie Mae alleges it acquired title to the

26  Property "following a non-judicial foreclosure sale held

27  in accordance with California Civil Code §§ 2429 et seq."

28

1  and that "Plaintiff's title was duly perfected by the
2  Trustee's Deed Upon Sale recorded on July 27, 2010 . . .
3  ." (Defs.' Suppl. RJN, Ex. A (Unlawful Detainer Compl.)
4  ¶ 1.)  Plaintiffs' defense of irregularities in the
5  foreclosure and trustee's sale could have been litigated
6  in the Unlawful Detainer Action.  See Mehr, 139 Cal. App.
7  at 1049.  This defense, if meritorious, would have
8  ineluctably prevented the unlawful detainer, as Fannie
9  Mae was required to establish compliance with the
10 applicable statutes governing the foreclosure and
11 trustee's sale, as well as establish it had perfected
12 title.

13

14      Thus, the judgment rendered in connection with
15 Fannie's Mae's complaint "necessarily adjudicated issues
16 relating to the propriety of the foreclosure." Dancy,
17 2011 WL 835787, at *6.  If Plaintiffs wished to challenge
18 that judgment, the proper procedure would have been to
19 file a motion to set aside the default.  Instead,
20 Plaintiffs belatedly filed this action, seeking to
21 relitigate claims they should have raised in the Unlawful
22 Detainer Action.  Bringing wrongful foreclosure, wrongful
23 eviction, and quiet title claims "involves pleading a
24 different theory of recovery, but addresses the same
25 injury." Ann, 321 Fed. Appx. at 620 (citing Zimmerman v.
26 Stotter, 160 Cal. App. 3d 1067 (1984)).  Thus, the

27

28

1  Unlawful Detainer Action and the instant action seek to
2  vindicate the same primary right.

3
4                **iii. Identity of the Parties**
5       Finally, to establish a defense of claim preclusion,
6  Defendants must show that the parties in each case are
7  identical or in privity with each other.  Mycogen Corp.,
8  28 Cal. 4th at 896.  Specifically, "[i]n order for res
9  judicata to apply, the party against whom the defense is
10 asserted must have been 'a party or was in privity with a
11 party to the prior adjudication.'"  Consumer Advocacy
12 Grp., Inc., v. ExxonMobil, Corp., 168 Cal. App. 4th 675,
13 689 (2008) (citing Citizens for Open Access to Sand &
14 Tide, Inc. v. Seadrift Ass'n, 60 Cal. App. 4th 1053, 1065
15 (1998)); see also Nguyen v. LaSalle Bank Nat'l Ass'n, No.
16 09-CV-0881 DOC (SSx), 2009 WL 3297269, *4, *8 (C.D. Cal.
17 Oct. 13, 2009) (holding a plaintiff was barred from
18 bringing claims related to foreclosure where bank brought
19 an earlier suit against plaintiff for unlawful detainer).
20 Here, Plaintiffs were defendants in the Unlawful Detainer
21 Action brought in state court by Defendant Fannie Mae and
22 res judicata is asserted against them.  Accordingly,
23 Defendants also satisfy this element.

24
25      Defendants have established all of the elements
26 necessary to apply the doctrine of claim preclusion.  The
27 judgment rendered in the Unlawful Detainer Action thus
28

bars all claims by Plaintiffs that challenge procedural defects in the foreclosure or trustee's sale.  <u>See</u> <u>Malkoskie</u>, 188 Cal. App. 4th at 975-76.  As all of Plaintiffs' allegations in the FAC relate to the irregularity of the foreclosure and trustee's sale, which is a defense Plaintiffs could have raised in the Unlawful Detainer Action, Plaintiffs' action is barred by the prior unlawful detainer proceeding.  <u>See Velasquez</u>, 2009 WL 1941807, at *3 (reaching the same result on similar facts); <u>see also</u> FAC ¶¶ 24-26 (wrongful foreclosure claim), 33-34 (wrongful eviction claim), 39-40 (quiet title claim), 45 (unfair business practices claim). Defendants accordingly have met their burden of demonstrating that Plaintiffs' present attacks on the trust deed, foreclosure proceedings, and trustee's sale are an attempt to relitigate the same primary right between the same parties.  Accordingly, Plaintiffs' claims are barred under the doctrine of claim preclusion.

### 2.  Issue Preclusion (Collateral Estoppel)

As above, "a federal court considering whether to apply issue preclusion based on a prior state court judgment must look to state preclusion law."  <u>McInnes v.</u> <u>California</u>, 943 F.2d 1088, 1092-93 (9th Cir. 1991) (citing 28 U.S.C. § 1738).  The scope of the doctrine of issue preclusion, also known as collateral estoppel, differs from that of claim preclusion.  While claim

preclusion bars litigation in a subsequent action of any issue that could have been raised in the prior action, see Amin, 112 Cal. App. 4th at 590 ("the rule is that the prior judgment is res judicata on matters which were raised or could have been raised, on matters litigated or litigable"), issue preclusion, by contrast, bars relitigation of issues that were actually litigated and necessarily decided in a prior action, Morris v. Blank, 94 Cal. App. 4th 823, 830-31 (2001) ("Collateral estoppel bars relitigation of an issue actually litigated and necessarily decided in prior litigation."); see also Modesto City Sch. v. Educ. Audits Appeal Panel, 123 Cal. App. 4th 1365, 1379 (2004) ("Generally, collateral estoppel bars the party to a prior action, or one in privity with him, from relitigating issues finally decided against him in the earlier action") (citation omitted); U.S. Golf Ass'n v. Arroyo Software Corp., 69 Cal. App. 4th 607, 616 (1999) (to invoke collateral estoppel, a party must show that the identical issue was actually litigated in the prior action).

Under California law, a party is precluded from relitigating an issue if (1) the issue decided in a prior adjudication is identical with that presented in the action in question; (2) there was a final judgment on the merits; and (3) the party against whom preclusion is asserted was a party or in privity with a party to the

prior adjudication.  <u>Clemmer v. Hartford Ins. Co.</u>, 22 Cal. 3d 865, 874 (1978).

### i.   Final Judgment on the Merits

Where a judgment is entered by default, as here, it collaterally estops relitigation of all of the material allegations of the complaint and every fact necessary to uphold the default judgment.  <u>See</u> <u>Mitchell v. Jones</u>, 172 Cal. App. 2d 580, 586-87 (1959) ("[A] default judgment conclusively establishes, between the parties so far as subsequent proceedings on a different cause of action are concerned, the truth of all material allegations contained in the complaint in the first action, and every fact necessary to uphold the default judgment"); <u>Four Star Elec., Inc. v. F & H Constr.</u>, 7 Cal. App. 4th 1375, 1380 (1992) (quoting <u>Mitchell</u>); <u>Gottlieb v. Kest</u>, 141 Cal. App. 4th 110, 149 (2006) ("California . . . accords collateral estoppel effect to default judgments . . . ."). The judgment is not conclusive, however, with respect to any defense or issue that was not raised and that is not necessary to uphold the judgment.  <u>Mitchell</u>, 172 Cal. App. 2d at  586-87; <u>Four Star Elec., Inc.</u>, 7 Cal. App. 4th at 1379-81.

### ii. Identity of Issues

As noted above, "a default judgment conclusively establishes, between the parties so far as subsequent

proceedings on a different cause of action are concerned, the truth of all material allegations contained in the complaint in the first action, and every fact necessary to uphold the default judgment." <u>Mitchell</u>, 172 Cal. App. 2d at 586-87.

When a purchaser brings an unlawful detainer action pursuant to California Code of Civil Procedure section 1161a, the purchaser must show that it acquired the property at a regularly conducted sale and thereafter duly perfected its title.  Cal. Code. Civ. P. 1161a.  In its Unlawful Detainer Complaint, Fannie Mae alleges it acquired title to the Property "following a non-judicial foreclosure sale held in accordance with California Civil Code §§ 2429 et seq." and that its "title was duly perfected by the Trustee's Deed Upon Sale recorded on July 27, 2010 . . . ."  (Unlawful Detainer Compl. ¶ 1.) In the instant action, Plaintiffs request that Court declare the foreclosure and trustee's sale invalid and restore Plaintiffs as the owners of the Property.  The issues of whether the foreclosure and trustee's sale were procedurally sound were material and necessary to uphold the default judgment, however.  Accordingly, Plaintiffs' claims related to the foreclosure, trustee's sale, and unlawful detainer are barred because the Superior Court's judgment collaterally estops relitigation of those issues.  <u>See</u> <u>Mitchell</u>, 172 Cal. App. 2d at 586-87.

### iii. Identity of the Parties

Moreover, Defendants clearly meet the final factor – the party against whom preclusion is asserted was a party or in privity with a party to the prior adjudication – because Plaintiffs were defendants in the Unlawful Detainer Action. (See Unlawful Detainer Compl. ¶ 2.) Plaintiffs' claims accordingly also are barred under the doctrine of collateral estoppel.

### B. Failure to Provide or Allege Tender

In addition to preclusion barring Plaintiffs from raising various arguments in favor of setting aside the foreclosure and trustee's sale, Plaintiffs' failure to make an offer of tender precludes relief.

"A tender is an offer of performance made with the intent to extinguish the obligation." Arnolds Mgmt. Corp. v. Eischen, 158 Cal. App. 3d 575, 580 (1984). Under California law, a party seeking to set aside a foreclosure or trustee's sale must make a "valid and viable tender of payment of the indebtedness owing." In re Worcester, 811 F.2d 1224, 1230 (9th Cir. 1987) (citation omitted); FCPI RE-HAB 01 v. E & G Invs., Inc., 207 Cal. App. 3d 1018, 1021 (1989) (holding a "valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust."); Karlsen v. Am. Sav. & Loan Ass'n, 15

1  Cal. App. 3d 112, 117-18 (1971) (holding a party seeking
2  to set aside a foreclosure sale must make a "valid and
3  viable tender of payment of the indebtedness owing").
4  Without an allegation or offer of tender in the amount of
5  the debt owed, a claim for "irregularity in the sale
6  procedure" cannot be maintained.  Abdallah v. United Sav.
7  Bank, 43 Cal. App. 4th 1101, 1109 (1996); LaGrone v.
8  Johnson, 534 F.2d 1360, 1362 (9th Cir. 1976) (reversing
9  judgment in favor of borrower where rescission was not
10  conditioned on tender of funds); Frison v. WMC Mortg.
11  Corp., No. 09-1733 LAB NLS, 2010 WL 2894980, at *4 (S.D.
12  Cal. Sept. 30, 2010) ("In other words, a plaintiff must
13  plead that she has paid amount of indebtedness or at
14  least is prepared to pay it if [injunctive relief] is
15  granted."); Alicea v. GE Money Bank, No. C 09-00091 SBA,
16  2009 WL 2136969 *3 (N.D. Cal. July 16, 2009) ("When a
17  debtor is in default of a home mortgage loan, and a
18  foreclosure is either pending or has taken place, the
19  debtor must allege a credible tender of the amount of the
20  secured debt."); U.S. Cold Storage v. Great W. Sav. &
21  Loan Ass'n, 165 Cal. App. 3d 1214, 1222 (1985) ("[T]he
22  law is long-established that a trustor or his successor
23  must tender the obligation in full as a prerequisite to
24  challenge of the foreclosure sale.").
25
26
27
28

Plaintiffs made no offer to tender at the time they filed their Complaint nor have they made such an offer thereafter.  Plaintiffs have not offered any equitable arguments to justify their requested interference with the completed foreclosure proceedings or the trustee's sale.  As Plaintiffs have failed to offer tender, the Court cannot set aside the allegedly unlawful conveyance of title or trustee's sale.  The Court accordingly GRANTS Defendants' Motion.

## C.  Leave to Amend

When granting a motion to dismiss, a court generally is required to grant leave to amend unless amending the pleadings would be futile.  See Deveraturda v. Globe Aviation Sec. Servs., 454 F.3d 1043, 1049-50 (9th Cir. 2006); Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995) (holding that futility is a sufficient ground upon which to deny leave to amend).  As set forth above, Plaintiffs are barred under the doctrines of claim and issue preclusion from relitigating claims based on alleged improprieties in the foreclosure and trustee's sale.  Thus, the Court concludes that further amendment to the pleadings would be futile.  See Ann, 321 Fed. Appx. at 620 (affirming a district court's denial of leave to amend where the court found an earlier unlawful detainer action was res judicata to a plaintiff's action for breach of contract and civil rights violations).

1
## IV. CONCLUSION

2      For the reasons stated above, the Court GRANTS

3 Defendants' Motion to Dismiss with prejudice.

4

5

6

7

8
Dated: <u>August 16, 2011</u>

9                                        VIRGINIA A. PHILLIPS
                         United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28